UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Ariel Josue Ashqui-Mejia
*Petitioner*,

v.

Corey Riendeau, et al.
*Respondents*.

Case No. 1:25-cv-0308-JL-AJ
Opinion No. 2025 DNH 147

### ORDER

Ariel Josue Ashqui-Mejia's petition for a writ of habeas corpus presents a narrow but recurring statutory question: whether a noncitizen who was apprehended near the border, released into the United States on his own recognizance pending removal proceedings, and may be denied a bond hearing when re-detained years later as an asserted "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b).  Mejia also contends that his detention is unlawful because he entered the United States as an unaccompanied minor and because DHS records allegedly misidentify him.  The parties have filed cross-motions for summary judgment.  For the reasons that follow, the court concludes that Mejia is entitled to a bond hearing, but not immediate release, and that his remaining claims fall outside the scope of available habeas relief.

I.      **Background**

1

The relevant facts are derived from the summary judgment record and undisputed unless otherwise noted.[1]

Mejia is an 18-year-old native and citizen of Ecuador.[2] On or around September 30, 2023, he entered the United States as a minor without inspection or admission.[3] United States Border Patrol ("USBP") encountered Mejia with his mother near El Paso, Texas, shortly thereafter.[4] After determining that Mejia and his mother had recently entered the United States unlawfully from Mexico, USBP took both individuals into custody at the El Paso Sector Hardened Facility, charging them as "alien[s] who [were] admitted or paroled" into the United States pursuant to 8 U.S.C. 1182(a)(6)(A)(i), and released them on their own recognizance under 8 U.S.C. § 1226.[5] Mejia settled in New York thereafter.[6]

Mejia turned 18 years old on July 8, 2025.[7] Ten days later, USBP agents stopped him during a roving patrol stop in Canton, New York.[8] USBP deemed Mejia a non-citizen unlawfully present in the United States and accordingly took him into custody at

---

[1] The evidence submitted in connection with the summary judgment motions include the following: (1) the Decl. of Keith M. Chan, Ass't Field Office Dir. (doc. no. 12-2); (2) the Decl. of Cary J. Miller, Deputy Patrol Agent (doc. no. 12-3); (3) Sept. 30, 2025 Order of the Immigration Judge (doc. no. 17-1); (4) Hosp. Records of Mercy Mejia Leon (doc. no. 17-5); (5) Warrant for Arrest of Alien (Oct. 4, 2023) (doc. no. 19-1); (6) Order of Release on Recognizance (Oct. 4, 2023) (doc. no. 18-1); (7) Notice of Custody Redetermination (Oct. 4, 2023) (doc. no. 18-1); and (8) Ashqui-Mejia Form I-213 (doc. no. 19-1).
[2] Pet. (doc. no. 9) ¶ 1.
[3] Form I-213 (doc. no. 19-1).
[4] Id.
[5] Id.
[6] Pet. (doc. no. 9) ¶¶ 2-3.
[7] Id. ¶ 13.
[8] Miller Decl. (doc. no. 12-3) ¶¶ 9-12.

Ogdensburg Station for further processing, transferred him into ICE custody at Plymouth County Correctional Facility in Massachusetts, and then to FCI Berlin in New Hampshire, where he currently remains detained.[9]

While detained, Mejia filed written pleadings conceding his inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), and the Immigration Court found him removable based on this admission.[10] The Immigration Court held a hearing to adjudicate his applications for relief from removal on September 25, 2025 and his removal proceedings remain ongoing.[11] The Immigration Court subsequently denied Mejia's request for a bond hearing on the ground that he is "statutorily ineligible for custody redetermination."[12]

*Habeas petition.* Mejia now petitions this court for habeas corpus relief, asserting that he was arrested and is "currently being… detained by federal agents without cause and in violation of his constitutional rights to due process of law."[13] He argues principally that he entered the United States as an unaccompanied minor, *see* 6 U.S.C. § 279(g)(2), and is therefore "entitled to a bond hearing, [] ineligible for [e]xpedited [r]emoval proceedings, and [] entitled to affirmative asylum proceedings."[14] He also submits, based on purported inaccuracies in the DHS records relating to his initial apprehension by USBP in 2023, that his current detention arises out of a

---

[9] *Id*. ¶¶ 11-12.
[10] *Id*. ¶ 12.
[11] *Id*.
[12] Sept. 30, 2025 Order of the Immigration Judge (doc. no. 17-1).
[13] Pet. (doc. no. 9) at 5.
[14] *Id*. at 2 n.2.

"misidentification."[15]  He requests that this court issue a writ ordering his immediate release on bond.[16]

Respondents seek dismissal of the petition, arguing that they are entitled to summary judgment because Mejia is an "applicant for admission" properly detained pursuant to the mandatory detention requirements of 8 U.S.C. § 1225(b).  Per the respondents, Mejia's alleged former UAC status is both unsubstantiated and irrelevant to the propriety of his current detention because "in July 2025, when he was taken into custody, he was no longer a minor let alone a UAC."[17]  Respondents further dispute that Mejia's DHS paperwork contains any inaccuracies but argue that, regardless, his misidentification argument is outside of the scope of this court's jurisdiction to entertain.

***Supplemental filings.***  Prior to oral argument on the parties' cross-motions for summary judgment, Mejia submitted supplemental documentation indicating that he was physically separated from his mother for roughly one week during his initial immigration detention in 2023, which he characterizes as "definitive evidence [showing] that he was a UAC by family separation."[18]  He also asserts in the alternative that he qualifies as a member of the class recently certified by the U.S. District Court for the Central District of California in *Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and is accordingly entitled to the class relief entered by that court; namely, a declaratory

---

[15] *Id*. ¶ 7.
[16] *Id*. at 5.
[17] Respondents' Mot. Summ. J. (doc. no. 12) at 8.
[18] Pet.'s Add'l Info. for Cross-Mot. Summ. J. (doc. no. 17) at 2.

judgment that DHS's policy of detaining non-citizens under § 1225(b)(2) is unlawful.[19] *Id.* at *9 ("extend[ing] the same declaratory relief granted" in its recent order on summary judgment to all members of the class); *see Bautista v. Santacruz,* 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (granting the petitioners' motion for summary judgment on the unlawfulness of DHS's § 1225(b)(2) detention policy).

The court ordered the respondents to respond to Mejia's contentions concerning his former unaccompanied minor status and submit related documentation.[20] In their responsive submission, the respondents contend that Mejia was never an unaccompanied minor within the meaning of 6 U.S.C. § 279(g)(2), and reiterate their argument as to irrelevance of any such designation on the lawfulness of Mejia's current immigration detention.[21] The respondents also submitted DHS documentation pertaining to Mejia's initial encounter with USBP agents, including a Form I-831 stating that "[a]ll subjects in [Mejia's family unit] will be processed as a Notice to Appear/Own Recognizance and released accordingly."[22]

II.    **Legal standard**

The parties have filed cross-motions for summary judgment under Fed. R. Civ. P. 56. "Summary judgment is appropriate in habeas proceedings… when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Bader v. Warden*, 2003 WL 21228520, at *3 (D.N.H. May 28, 2003),

---

[19] *Id.*
[20] Dec. 1, 2025 Endorsed Order.
[21] Response to Pet.'s Add'l Info. Filing (doc. no. 18).
[22] Doc. no. 19-1.

*aff'd sub nom. Bader v. Warden, New Hampshire State Prison*, 488 F.3d 483 (1st Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). In evaluating a Rule 56 motion, "[t]he court must examine the record in the light most favorable to the nonmovant and must make all reasonable inferences in that party's favor." *Viscito v. Nat'l Planning Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (quotations and citations omitted).

**III.    Analysis**

The government moves for summary judgment on the ground that Mejia cannot demonstrate that he is "clearly and beyond a doubt entitled to be admitted" per 8 U.S.C. § 1225(b)(2)(A) and is therefore an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b). But that argument, standing alone, does not resolve the dispositive statutory question presented by Mejia's claim: whether, in light of his immigration history, he is properly treated as an applicant for admission—and therefore statutorily ineligible for release on bond—at this juncture.

In *Loja v. FCI Berlin, Warden*, No. 1:25-CV-386-JL-TSM, 2025 WL 3079160, at *3 (D.N.H. Nov. 4, 2025), this court ordered an Immigration Court to grant a bond hearing as a due process habeas remedy for a non-citizen who is initially detained close to the border under § 1225(b), released into the United States on conditional parole under § 1226, then re-detained years later. Here, the basic facts pertaining to Mejia's entry and release into the United States are undisputed and analogous: Mejia was apprehended shortly after entering the United States, issued a Notice to Appear "charging him as an alien who was not admitted or paroled or who arrived in the U.S. at a time or place other than designated by the Attorney General, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)," and

6

released from custody at the border on his own recognizance pending further immigration proceedings. The respondents do not contend that Mejia was ever paroled into the United States nor do they attempt to distinguish the facts of this case from those present in *Loja*.[23] Indeed, beyond arguing that Mejia's "prior alleged UAC status is irrelevant to the fact that he is currently properly detained" because he has since reached the age of majority, the respondents do not meaningfully address the impact of the circumstances under which Mejia entered the United States at all.[24]

Aging out of unaccompanied-minor status may bear on which statutory and regulatory protections are no longer available to Mejia. *See, e.g.*, 8 C.F.R. § 236.3(d)(3) ("When an alien previously determined to have been a UAC is no longer a UAC because he or she turns 18 years old, relevant ORR and ICE procedures shall apply."). Aging-out does not, however, itself establish that Mejia remains an "applicant for admission" for purposes of § 1225's detention authority notwithstanding his release into the United States under § 1226. *See Loja*, 2025 WL 3079160, at *2 (citing *De Andrade v. Moniz*, No. 25-CV-12455-FDS, 2025 WL 2841844, at *5 (D. Mass. Oct. 7, 2025) (Saylor, C.J.) (reasoning that releasing a non-citizen under § 1226 rather than using the "mechanism

---

[23] In their supplemental briefing ordered by the court, the respondents include a citation to *Romero v. Bondi*, 2025 WL 2490659 (E.D. Va. July 2, 2025), to assert that any reference to § 1226 in the DHS paperwork pertaining to Mejia's 2023 release into the United States cannot "change [Mejia's] status under the law." As described above, this court found in *Loja* that such facts give rise to certain limited due process protections. 2025 WL 3079160, at *3. The respondents acknowledged at oral argument that *Loja* appears to control the result in this case if the court adheres to its reasoning in that decision.

[24] Respondents' Mot. Summ. J. (doc. no. 12-1) at 8. At oral argument, the respondents contended that they did not understand Mejia's petition to assert 8 U.S.C. § 1226 as the proper statutory authority for his detention. Given that Mejia expressly raised the applicability of § 1226 in his supplemental filing, the court deems the petition amended to include such a claim.

7

[that Congress provided] for paroling applicants for admission into the United States without changing their status," i.e., granting the non-citizen humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), amounted to a forfeiture of the government's "right to treat [the non-citizen] 'in the same manner as that of any other applicant for admission to the United States'" (quoting 8 U.S.C. § 1182(d)(5)(A)))). Absent any explanation as to how the circumstances of Mejia's immigration history are materially different from the petitioner's in *Loja*, the court reaches the same conclusion it reached in that case; namely, that "a bond hearing is the course of action most consistent with the requirements of due process." *Id.* at *3.

To the extent that Mejia asserts he is entitled to immediate release *without* a bond hearing based on his asserted status as a former unaccompanied minor, the court denies Mejia's requested relief. Even assuming, for the sake of argument, that immediate-release relief may be available to individuals who were formerly designated as unaccompanied minors, Mejia has not established that he ever held that status. The designation "unaccompanied minor" is a formal classification assigned by immigration officers during initial processing; it does not arise automatically from a temporary separation from a parent or guardian. See 8 C.F.R. § 236.3 ("Immigration officers will make a determination as to whether an alien under the age of 18 is a UAC at the time of encounter or apprehension and prior to the detention or release of such alien."). Here, Mejia's DHS records reflect that he was apprehended and processed as part of a family unit, not as an unaccompanied minor. In the absence of evidence that DHS ever designated him as unaccompanied, Mejia cannot invoke the legal consequences that may

attach to former unaccompanied-minor status, and immediate release on that basis is therefore unwarranted.

Lastly, Mejia asserts that ICE has misidentified him based on allegedly inaccurate information contained in Department of Homeland Security paperwork. This contention is raised separately to his challenge to the lawfulness of his current detention under the immigration statutes and is, at bottom, a challenge to the correctness of DHS's factual findings and recordkeeping. To the extent Mejia seeks relief on that basis, that claim is outside the court's jurisdiction to consider. This court's habeas jurisdiction under 28 U.S.C. § 2241 is limited to claims that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." It does not extend to freestanding challenges to the accuracy of agency records or to alleged factual errors absent a showing that those errors themselves give rise to an independent constitutional or statutory violation addressable in habeas. Because this court may not, consistent with jurisdictional limits, review alleged errors in immigration paperwork divorced from a cognizable challenge to the legality of the Mejia's custody, the court lacks jurisdiction over that claim and it is dismissed without reaching the merits.[25]

## IV. Conclusion

---

[25] Because the court grants Mejia an individualized bond hearing on other grounds, which affords him all the relief to which he would be entitled at this stage of the proceedings, the court need not reach his contention that he is entitled to the class-wide relief ordered in *Bautista*, 2025 WL 3288403.

For the foregoing reasons, the respondents' motion for summary judgment[26] is **DENIED**. The respondents are **ORDERED** to provide Mejia with a bond hearing as soon as practicable to allow the Immigration Court to reconsider his request for release. All other claims for habeas relief[27] are **DENIED**.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Date: December 19, 2025
cc: Counsel of Record

---

[26] Doc. no. 12-1.
[27] See Pet. (doc. no. 9); Pet.'s Cross-Mot. Summ. J. (doc. no. 15).